IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01028-EWN-BNB

ROBERT WAYNE ROBINSON,

Plaintiff,

v.

CAPTAIN YOUNGER,
LT. HARVEY,
SGT. TERRANOVA,
DEPUTY GREG BLACK,
SGT. B. MCCOY,
DEPUTY ROBERT GRIGGS, and
DEPUTY SCHOENES,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the **Defendants' Motion for Summary Judgment** [Doc. # 86, filed 1/19/07] (the "Motion").  I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the defendants on all of the plaintiffs' claims.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*.  I must liberally construe the pleadings of a *pro se* plaintiff.  Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986).  The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Id. at 324.

"The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).  Affidavits must be based on personal knowledge and must set forth facts that would be admissible

in evidence.  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted).  "Conclusory and self-serving affidavits are not sufficient."  Id.

## II.  UNDISPUTED MATERIAL FACTS[1]

1.   On June 26, 2002, the plaintiff robbed the jewelry counter in a department store at the Park Meadows Mall in Douglas County.  *Motion*, Ex. A-1, 8:6-9:17; Ex. A-2, ¶ 2.

2.   During the robbery, the plaintiff brandished what later turned out to be a plastic gun and told the clerk that if she got up, his brother would come back and kill her.  Id. at Ex. A-2, ¶ 2; Ex. A-3, ¶ 3.

3.   When Douglas County deputies attempted to apprehend the plaintiff after the robbery, he resisted and led them on a chase through the mall.  The chase ended when the plaintiff collided with a mall kiosk, injuring himself and one of the pursuing deputies.  Id. at Ex. A-1, 10:5-20; 11:5-14; 14:6-16; Ex. A-2, ¶ 2.

4.   After he was apprehended, the plaintiff was transported to Swedish Hospital for medical clearance.  Id. at Ex. A-1, 12:23-13:21; Ex. A-2, ¶ 3.

5.   When speaking to deputies at the time of his arrest and later at Swedish Hospital, the plaintiff misrepresented that his name was Douglas Wilford Thomas.  Id. at Ex. A-2, ¶ 2; Ex. A-3, ¶ 3.

---

[1]The plaintiff's response to the Motion is sworn under penalty of perjury.  *Plaintiff* [sic] *Motion in Opposition to Summary Judgment* (the "Response"), p. 26.  However, the Statement of Facts is replete with conclusory allegations and conclusions of law.  Conclusory allegations and conclusions of law are not sufficient to create a material fact dispute.  The plaintiff also submitted a sworn declaration with the Response.  *Declaration of Robert Wayne Robinson* (the "Robinson Declaration").  The Declaration is more factual in nature.  However, it does not contain any factual statements that are material to my analysis of the Motion.

6.   The plaintiff was transported from Swedish Hospital to the Douglas County Detention Center by defendants Black and Griggs.  Id. at Ex. A-4, ¶¶ 1-2.

7.   When defendant Black placed the plaintiff into the back of the patrol car, the plaintiff unfastened his seat belt and laid down on the back seat.  Black explained that, as a matter of officer and passenger safety, the plaintiff must remain seated upright and with his seat belt fastened.  The plaintiff ignored Black.  Id. at Ex. A-4, ¶¶ 2-3.

8.   Black pulled the plaintiff to an upright position and re-fastened the plaintiff's seat belt.  In order to protect himself and to secure the plaintiff while he fastened the seat belt, Black placed his forearm across the plaintiff's neck.  Placing the forearm across the jaw is a common safety technique used on uncooperative or potentially combative arrestees to prevent biting, spitting, etc.  Id. at Ex. A-4, ¶¶ 2-3; Ex. A-1, 19:15-23.

9.   En route to the Douglas County Detention Center, the plaintiff again unfastened his seat belt and laid down.  Black and Griggs stopped the car and again raised the plaintiff to an upright position and re-fastened his seat belt.  Id. at Ex. A-4, ¶ 4.

10.   Black and Griggs completed the transport, and the plaintiff was booked into the Douglas County Detention Facility.  Id. at Ex. A-4, ¶ 5.

11.   On July 3, 2002, the plaintiff filed an internal administrative complaint (a "kite") alleging that he had been assaulted during his transport to the Douglas County Detention Facility.  Id. at Ex. A-1, 29:25-32:12 and Ex. 3.

12.   On September 19, 2002, the plaintiff filed another kite with jail staff, asking why he had not heard back from Internal Affairs about his initial complaint.  In his kite, the plaintiff alleged, "It is obvious that there exists a cover-up."  Id. at Ex. A-1, 37:6-38:10 and Exhibit 4.

4

13.   The plaintiff's kite was referred to the Douglas County Sheriff's Office Internal Affairs Division, where it was investigated by defendant McCoy.  <u>Id.</u> at Ex. A-5, ¶¶ 1-2.

14.   McCoy, a Deputy with the Douglas County Sheriff's Office of Internal Affairs at the time of the incident, investigated the allegation, interviewed the persons involved, and determined that the plaintiff's complaint was unfounded.  McCoy based his determination on the following findings: (a) the plaintiff waited nearly a week to raise these claims, during which time he raised other issues in his kites about disciplinary problems he had already been involved in since his arrival; (b) as time went on, the plaintiff embellished his complaint, by adding a claim that Black had made racial slurs during the arrest; (c) Black is a veteran deputy with no complaints of unreasonable force or racism; (d) the forearm technique used by Black during the plaintiff's transport is a common restraining practice for officer safety; (e) Griggs witnessed the entire transport and denied that Black had engaged in any assault of the plaintiff or made racist comments; (f) the plaintiff had attempted to escape during his arrest and sustained minor injury during that escape attempt but had no injury consistent with the assaults he described; and (g) the plaintiff had demonstrated a propensity for lying when he misrepresented his identity at the time of his arrest, claiming that his name was Douglas Wilford Thomas.  <u>Id.</u> at Ex. A-5, ¶¶ 1, 2, 6.

15.   The primary basis for the plaintiff's belief that there was a cover up and a conspiracy to destroy evidence of the physical assaults is that, in his initial interview with his public defender, she told him that the reason his bail was high is because he is black and he is in Douglas County. <u>Id.</u> at Ex. A-1, 53:19-54:9.  In addition, the plaintiff believes there was a cover up because: (1) he believes there are audio/visual recordings of the assaults, but he has been told that no such recordings exist, *Motion*, Ex. A-1, 37:23-45:8; (2) the Internal Affairs investigation took too

long, id. at 37:6-38:10; (3) Younger and Harvey were in a supervisory role and should have more thoroughly overseen the investigation, id. at 54:10-14; (4) Black and Griggs denied the assault allegations during the Internal Affairs investigation, id. at 54:15-55:13; (5) Internal Affairs waited almost a month to interview Black and Griggs, id. at 55:24-56:12; and (6) Internal Affairs did not interview the witnesses at the hospital. Id. at 55:24-56:6.

16.   The plaintiff describes his alleged sexual assaults as follows: (1) during a frisk on October 7, 2002, Deputy Rhorer placed his hands on the plaintiff's buttocks (on the outside) to move him over; and (2) during a frisk on December 14, 2002, Defendant Schnoes "shoved his hand up my ass," which he later restated as "while running his hand up one of my legs, he forcibly struck his finger all the way up my behind and touched my rectum forcibly." Id. at 61:14-64:21; 85:25-86:20.

17.   On November 12, 2002, the plaintiff filed another kite with jail staff.  The plaintiff complained that he had not received a response regarding his allegations of the physical assaults and the sexual assault.  The plaintiff stated, "Is this what is called a cover up[?]" Id. at 60:8-61:7 and Exhibit 8.

18.   The plaintiff describes his evidence of a cover up of the alleged October 7, 2002, assault as follows: (1) he believes Younger and Harvey "shared the general conspiratorial objective as participants in the conspiracy"; (2) he never received written findings of the Internal Affairs investigation; and (3) Lt. Noble must have shared in the conspiracy to cover up that investigation because he was the liaison between the plaintiff and the administration. Id. at 83:2-85:24.

6

19.   The plaintiff describes his evidence of a cover up of the alleged December 14, 2002, sexual assault as follows: (1) defendant Schnoes' name was spelled differently in different documents and he signed his name to documents even where his name was misspelled, id. at 93:5-16; (2) defendants Younger and Harvey were in a supervisory role and deprived Plaintiff of a fair hearing by allowing Defendant Terranova to conduct the investigation, id. at 101:8-25; (3) defendant Terranova should have recused himself from the investigation because he was present during the alleged assault, id. at 102:5-12; (4) Schnoes denied that he sexually assaulted the plaintiff, id. at 103:7-20; and (5) while investigating the alleged sexual assault, Terranova asked the plaintiff if Schnoes touched his rectum instead of using the plaintiff's words (that Schnoes "stuck his hand up my ass"). Id. at 103:21-106:1.

20.   Defendants Younger and Harvey were not involved in and were not aware of the submission of any information to a judge in connection with the setting of the plaintiff's bail. Id. at Ex. A-9, ¶ 4; Ex. A-10, ¶ 2.

The plaintiff filed his Amended Complaint on October 4, 2005.  The Amended Complaint asserts three claims.  Claim One alleges that the defendants conspired to cover up and/or destroy evidence of assaults on the plaintiff in violation of the plaintiff's constitutional rights to equal protection and due process.  Claim Two alleges that in July 2002, Judge J. S. Miller conspired with other judges employed in the Douglas County judicial system to cover up a pattern of imposing excessive bonds.  Claim Two further alleges that defendants Harvey and Younger encouraged and condoned the submission of inaccurate and exaggerated information to judges to influence higher bonds.  Claim Two was dismissed as to Judge J. S. Miller on November 10, 2005.  Claim Three alleges that (1) for the two and one-half years he was a pretrial detainee, the

plaintiff was denied access to the courts which crippled his ability to assist his attorney in preparing a defense to the criminal charges against him: (2) defendants Harvey and Younger established an unconstitutional policy regarding court access; and (3) having an inadequate law library interfered with the plaintiff's ability to litigate a case in this Court.

The plaintiff sues the defendants in their official capacities. *Complaint*, p.1, caption. He seeks $500,000.00 in compensatory damages, $200,000.00 in punitive damages, and attorneys' fees. The defendants seek summary judgment on all of the plaintiff's claims.

## III. ANALYSIS

### A. Claim One

The defendants assert that the Claim One is barred by the applicable statute of limitation. *Motion*, pp. 12-13. I previously construed Claim One as asserting claims under both 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). *Recommendation of United States Magistrate Judge* [Doc. #93, issued 1/26/07], pp. 4-6. Actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitation for §1983 actions arising in Colorado is two years. Id. at 1266; Colo.Rev.Stat. § 13-80-102.[2] In addition, the two year statute of limitation applies to claims brought under 42 U.S.C. § 1985. Tucker v. Belaski, 86 F.3d 1167, 1996 WL 273891, *2 (10th Cir. May 23, 1996).

---

[2]The defendants argue that the one-year statute of limitation found in section 13-80-103, C.R.S., should apply to the plaintiff's claims. I have previously determined that the two-year limitation period of section 13-80-102, C.R.S., applies to the plaintiff's claims under §1983. *Recommendation of United States Magistrate Judge* [Doc. #93, issued 1/26/07], p. 8

Federal law rather than state law determines when a cause of action accrues.  See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  Id. at 969.  "A civil rights action accrues when facts that would support a cause of action are or should be apparent."  Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).

### 1.  Alleged Physical Assaults

The plaintiff testified that the primary basis for his belief that there was a cover up and a conspiracy to destroy evidence of the physical assaults against him is that his public defender, Debra Grohs, told him in an initial interview that the reason his bail was high is because he is black, and he is in Douglas County.  Id. at Ex. A-1, 53:19-54:9.  The plaintiff states that his bail was set on June 26, 2002.  Response, p. 20 and Declaration of Robert Wayne Robinson, ¶ 12. The plaintiff's conversation with Ms. Grohs occurred on or before November 29, 2002. Defendants' Reply in Support of Motion for Summary Judgment, Ex. A-13 and attached incident report.  Therefore, the plaintiff knew of the primary basis for his belief that there was a cover up on or before November 29, 2002.

In addition, the plaintiff testified that he believes there was a cover up because he believes there are audio/visual recordings of the assaults, but he has been told that no such recordings exist.  Motion, Ex. A-1, 37:23-45:8.  On October 25, 2002, the plaintiff submitted a kite wherein he inquired as to the existence of audio and video recordings of the assaults.  Response, Ex. A-24a.  On October 31, 2002, a reply was delivered to the plaintiff which informed him that there

are no audio or video recordings.  Therefore, the plaintiff knew of this particular basis of the alleged cover up as early as October 31, 2002.

The plaintiff further testified that he believes there was a cover up because: (1) the Internal Affairs investigation took too long, id. at 37:6-38:10; (2) Younger and Harvey were in a supervisory role and should have done a better job of overseeing the Internal Affairs investigation, id. at 54:10-14; (3) Black and Griggs denied the assault allegations during the Internal Affairs investigation, id. at 54:15-55:13; (4) Internal Affairs waited almost a month to interview Black and Griggs, id. at 55:24-56:12; and (5) Internal Affairs did not interview the witnesses at the hospital.  Id. at 55:24-56:6.  The plaintiff received the results of the Internal Affairs investigation on September 20, 2002, three months after the alleged assaults.  Id. at 35:4-18.  Therefore, the plaintiff's remaining bases for his belief of a cover up were available to him on or before September 20, 2002.

In addition, on September 19, 2002, the plaintiff asserted in a kite to Deputy McCoy that, as to the investigation of the alleged assaults, "[i]ts obvious that there exists a cover-up."  Id. at Ex. 4 to Ex. A-1.

It is apparent from the plaintiff's own testimony and his kite that he knew of the existence and cause of his injury stemming from the alleged cover up of the physical assaults by September 19, 2002.  He was, therefore, required to file this claim on or before September 19, 2004. Because he did not initiate this action until May 24, 2005, his claim of conspiracy to cover up evidence of physical assaults is barred by the two year statute of limitation.

The plaintiff attempts to create a material fact dispute regarding his knowledge of the cover up by stating the following in his sworn Response:

10

> Plaintiff asserts that on or about September 19, 2002 he did not know or have reason to know that there existed a conspiracy to cover-up or destroy evidence of alleged assaults.  Nor did plaintiff know that such a conspiracy was a civil rights violation at that point.

*Response*, p. 6, ¶ 14.  The plaintiff makes a similar declaration regarding his lack of knowledge as of November 12, 2002.  *Response*, p. 7, ¶ 16.

The plaintiff's declarations directly contradict his prior sworn deposition testimony.  In his deposition, the plaintiff admitted that (1) he submitted a kite on September 19, 2002; (2) in the kite, he stated that "Its obvious there exists a cover-up"; and (3) at the time, he believed there was a cover up of the assaults because it was taking too long to investigate the assaults and because there was no video or audio recording of the assaults.  *Motion*, Ex. A-1, 37:6-40:8.

Where a sworn statement conflicts with the declarant's prior sworn statements, the statement will not operate to create a genuine fact dispute if it is merely an attempt to create a sham fact issue.  Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986).  "Where . . . a party has been examined extensively at deposition and then seeks to create an issue of fact through a later, inconsistent declaration, he has the duty to provide a satisfactory explanation for the discrepancy at the time the declaration is filed.  To allow him to preclude summary judgment simply by contradicting his own prior statements would seriously impair the utility of Federal Rule of Civil Procedure 56."  Sinskey v. Pharmacia Ophthalmics, Inc., 982 F.2d 494, 498 (D.C. Cir. 1992).

When determining if the declarant is attempting to create a sham fact issue, the following factors are relevant: (1) whether the declarant was cross-examined during his earlier testimony; (2) whether the declarant had access to the pertinent evidence at the time of his earlier testimony

or whether the declaration was based on newly discovered evidence; and (3) whether the earlier testimony reflects confusion which the declarant attempts to explain. <u>Nimmo</u>, 796 F.2d at 1237.

The plaintiff provided his deposition testimony while proceeding *pro se*. As a result, he did not have the benefit of cross-examination by his own counsel. However, there is no evidence that the plaintiff was confused or otherwise misspoke. <u>See</u> <u>Martin v. Merrell Dow Pharmaceuticals, Inc.</u>, 851 F.2d 703, 705 (3rd Cir. 1988) (holding that where the witness was confused or misspoke at the prior deposition, a subsequent correcting or clarifying affidavit could be sufficient to create a material fact dispute). To the contrary, the plaintiff asked to, and was permitted to, refer to his notes in order to recall why he had reason to believe there was a cover up. *Motion*, Ex. A-1, 38:17-23. Moreover, the plaintiff provides no explanation for the inconsistency between his earlier sworn deposition testimony and the statements made in his Response to the summary judgment motion. The contradictory statements are provided solely in response to the evidence presented in the defendants' summary judgment motion. For these reasons, I find that the sworn statements are an attempt to create a sham fact issue and, therefore, fail to create a genuine factual dispute regarding the plaintiff's knowledge of the existence and cause of his injury on or before September 19, 2002.

In addition, as to the plaintiff's sworn statement that he did not "know that such a conspiracy was a civil rights violation" on or before September 19, 2002, a cause of action accrues when the facts that would support it are or should be apparent, not when the plaintiff realizes that the facts support a legal claim. <u>Coleman v. Morall</u>, 64 Fed.Appx. 116, 119 (10th Cir. 2003) (stating that "in determining when a cause of action has accrued, where the plaintiff is

aware of both the fact that he has been injured and its cause, federal courts should not postpone

accrual of the cause of action until the plaintiff has realized the legal basis of his claim").

## 2.   First Alleged Sexual Assault

The plaintiff alleges that defendants Younger, Harvey, and McCoy were involved in the

conspiracy to cover up evidence of the alleged sexual assault which occurred on October 7, 2002.

*Motion*, Ex. A-1, 83:2-5.  The primary basis for his belief is "the fact that [he] had never received

anything in writing documenting the findings of their investigation into my allegations that I was

sexually assaulted."  Id. at 83:6-85:8.  In order to survive summary judgment on this claim, the

plaintiff must present evidence to create a material fact dispute that he did not know, and should

not have known, of the basis for the claim until after May 24, 2003 (two years before he filed this

action).  The plaintiff does not provide any competent evidence regarding the timeliness of this

claim.

To the contrary, he provides a copy of an Inmate Kite wherein he demands an

investigation of the alleged sexual assault on October 7, 2002--the same day it occurred.

*Response*, Ex. A-23.[3]  In addition, on November 12, 2002, the plaintiff authored an Inmate Kite

wherein he stated:

> I never recieved [sic] a response from on [sic] my wishes to file
> charges against the two deputies that assaulted me three times in
> the police [sic] while I was being transported from the hospital and
> when I was sexually fondled by another deputy while being frisked
> here at the jail.  Is this what is called a cover up.

*Motion*, Ex. A-1, 60:8-61:7 and Attachment 8.

---

[3]I note that the Inmate Kite is dated "10-7-09."  However, it is clear from the text of the
plaintiff's complaint and the date of the response that the kite was initiated in 2002, not 2009.

It is clear that the plaintiff was actively pursuing an investigation of, and information relating to, the sexual assault immediately after it happened.  I find that, as a matter of law, the plaintiff knew or should have known that he did not receive written findings of an investigation well before May 24, 2003.  Accordingly, this claim is also barred by the two year statute of limitation.

### 3.  Second Alleged Sexual Assault

The plaintiff describes his evidence of a cover up of the alleged December 14, 2002, sexual assault as: (1) defendant Schnoes' name was spelled differently in different documents and he signed his name to documents even where his name was misspelled, id. at 93:5-16; (2) defendants Younger and Harvey were in a supervisory role and deprived Plaintiff of a fair hearing by allowing Defendant Terranova to conduct the investigation, id. at 101:8-25; (3) defendant Terranova should have recused himself from the investigation because he was present during the alleged assault, id. at 102:5-12; (4) Schnoes denied that he sexually assaulted the plaintiff, id. at 103:7-20; and (5) while investigating the alleged sexual assault, Terranova asked the plaintiff if Schnoes touched his rectum instead of using the plaintiff's words (that Schnoes "stuck his hand up my ass").  Id. at 103:21-106:1.

Terranova's investigation was completed by December 19, 2002.  Id. at Ex. A-8 and Attachment 2; *Response*, Ex. A25.  Terranova sent the plaintiff a copy of his findings on December 19, 2002.  *Response*, Ex. A-25.  It is obvious from the findings that (1) Terranova conducted the investigation; (2) Terranova did not recuse himself from the investigation; (3) Schnoes denied that he sexually assaulted the plaintiff; and (4) while investigating the alleged sexual assault, Terranova used the term rectum instead of using the plaintiff's words.  Therefore,

14

the plaintiff knew or should have known of the existence and cause of his injury stemming from the cover up of the December 14, 2002, sexual assault on or before December 19, 2002.  The plaintiff had two years, or until December 19, 2004, to assert this claim in a civil rights action.  He did not initiate this action until May 24, 2005.  This claim is barred by the two year statute of limitation.

I respectfully RECOMMEND that the Motion be GRANTED insofar as is seeks summary judgment on Claim One as barred by the statute of limitations.

### D.   Claim Two

In Claim Two, the plaintiff alleges that defendants Younger and Harvey violated the plaintiff's due process rights when they encouraged and condoned the submission of inaccurate and exaggerated information to judges to influence higher bonds.  *Amended Complaint*, p. 5.  I have liberally construed this claim to include allegations that defendants Younger and Harvey conspired with each other and with unspecified sheriff's personnel to influence the imposition of excessive and oppressive bonds.  *Recommendation of United States Magistrate Judge* [Doc. #35, issued 5/15/06], p. 8.

In his deposition, the plaintiff clarified this claim.  He states that his bond was set too high due to a conspiracy between the entire Douglas County judicial system, Deputy Darren Weekly, Deputy Troy Bozarth, and defendants Younger and Harvey.  *Motion*, Ex. A-1, 107:13-109:2; 114:14-115:14; 116:16-117:20.  Specifically with respect to Younger and Harvey, the plaintiff alleges that they submitted false information to the judge to "influence a higher bond," id. at 117:3-119:14, and encouraged and condoned the submission of inaccurate and exaggerated information to the judge.  Id. at 117:18-20.

15

The defendants assert that Claim Two is barred by the statute of limitation because the defendants' alleged actions necessarily occurred on or before June 22, 2002. *Motion*, pp. 15-16. However, the appropriate inquiry is *when the plaintiff knew or should have known* of the defendants' actions. I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks summary judgment on Claim Two as barred by the statute of limitations.

The defendants also seek summary judgment on Claim Two because the plaintiff does not have any evidence to support the claim. Id. at pp. 13-15.

The plaintiff is suing Younger and Harvey in their official capacities as supervisors at the Douglas County Detention Center. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. New York City Department of Social Services, 436 U.S. 658, 694 (1978). A policy is a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entities' officers. Id. at 690. A custom is a "persistent and widespread ... practice[] of ... officials." Id. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970)).

The plaintiff does not provide any evidence of the existence of a Douglas County Detention Center custom or policy to encourage and condone the submission of inaccurate and exaggerated information to judges to influence higher bonds. He makes only the following conclusory statement:

16

> [O]ver two years that I was incarcerated at the detention facility, there were numerous times when other inmates had reason to believe that their bonds were also excessive and oppressive, and just about all--just about every time that there was a black inmate, his bond was always excessive or what--what they believed was excessive or oppressive.
>
> * * *
>
> I believe as supervisors and being in a supervisory capacity, that this type of practice could not be taking place without [Younger and Harvey's] knowledge.

Id. at Ex. A-1, 116:8-117:2.

Because the plaintiff has not set forth any competent evidence of the existence of a Douglas County Detention Center custom or policy to encourage and condone the submission of inaccurate information to judges to influence higher bonds, Younger and Harvey are entitled to summary judgment on Claim Two insofar as they are being sued in their official capacities.

To the extent the Amended Complaint can be construed as suing Younger and Harvey in their personal capacities, an individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

Younger and Harvey attest that they were not involved in and were not aware of the submission of any information to a judge in connection with the setting of the plaintiff's bail. Id. at Ex. A-9, ¶ 4; Ex. A-10, ¶ 2.  The plaintiff has not set forth any evidence to the contrary. Indeed, the plaintiff admits that he does not know if Younger or Harvey actually submitted false information to the judge.  Id. at Ex. A-1, 118:1-119:1.  He merely believes that false information could not have been submitted without their knowledge because they are supervisors.  The plaintiff's belief is insufficient to create a material fact dispute regarding whether Younger or Harvey had any direct responsibility for the amount of the bond set in his criminal case or whether they conspired to influence the amount of the bond.  Therefore, they cannot be held liable in their individual capacities.

I previously construed Claim Two as asserting a claim under 42 U.S.C. § 1985(3).

*Recommendation of United States Magistrate Judge* [Doc. #93, issued 1/26/07], pp. 4-6.  Claims under §1985(3) are narrowly construed:

> The case law has defined the elements of a claim under this statute. The essential elements of a §1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.  The evolving law has clarified these elements.  Firstly, a valid claim must, of course, involve a conspiracy. Secondly, however, §1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others, but rather, only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. The other class-based animus language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias.  In fact, the Supreme Court has held that it is a close question whether §1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause.

Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (internal quotations and citations omitted).

Because the plaintiff has not provided any evidence to create a material fact dispute regarding the existence of a conspiracy, the defendants are entitled to summary judgment on the allegations of conspiracy under 42 U.S.C. § 1985(3) asserted in Claim Two.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment on Claim Two.

### D.   Claim Three

Claim Three alleges that while the plaintiff was a pretrial detainee he was deliberately deprived of his right to access the courts.  The right of access to the courts is a fundamental constitutional right.  Bounds v. Smith, 430 U.S. 817, 828 (1977).  However, an inmate alleging denial of access to the courts must allege an actual injury.  Lewis v. Casey, 518 U.S. 343, 349 (1996).

The Amended Complaint alleges that "[t]he absence of a constitutionally adequate law library crippled plaintiff's ability to assist his attorney in preparing a defense to the criminal charges against the plaintiff."  *Amended Complaint*, p. 6.  The Amended Complaint further alleges that the "[n]on-existent constitutionally adequate law library also prevented plaintiff from complying [sic] and researching U.S. District Court directives issued in Civil Action No. 03-ES-1030, which was dismissed without prejudice, no law library, no appeal."  Id.

The defendants assert that this claim is barred by the statute of limitation.  *Motion*, p. 16 (title of Section C).  However, the defendants do not provide any argument or evidence to support their limitations defense.  I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks summary judgment on Claim Three as barred by the statute of limitation.

The defendants further assert that they are entitled to summary judgment on this claim because the plaintiff cannot establish that the law library is inadequate or that he has suffered any constitutionally cognizable injury.  To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim."  Id. at 356.  Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351).

When questioned during his deposition about the injury caused to his criminal case by the inadequate law library, the plaintiff was unable to demonstrate a constitutionally cognizable injury:

> Q.  But I need specifics.  Did you miss a deadline because of this?
> Was there an obvious case that would have got you not convicted
> that you didn't find because of this?  What did you actually - not in
> vague constitutional terms, but what actually happened to you?
>
> A.  Well, I was - I was convicted and - and - and remanded to the
> department of corrections for 64 years.
>
> Q.  But you did it.  What did the legal research do to mess you up?
> Why is the legal research at the law library to blame for your being
> here?
>
> A.  I never - I attempted to plead guilty by reason of insanity.  I
> never denied that I committed this crime.
>
> Q.  Okay.  How did the law library -
>
> A.  I attempted - I attempted to consider representing myself,
> which is virtually impossible if I don't have access to a law library.

Motion, Ex. A-1, 131:11-20.

This testimony falls far short of establishing an injury.  The plaintiff does not identify which legal resources were denied or how the denial of legal resources hindered him from pursuing a nonfrivolous defense.

20

The plaintiff further testified that the lack of an adequate law library prevented him from effectively assisting his criminal attorney in preparing his defense.  Id. at 133:16-23.  Hhe was unable articulate with any specificity how his inability to assist his attorney hindered his efforts to pursue a nonfrivolous defense, however.  Id. at 133:23-134:10.

The plaintiff also testified that he was unable to pursue a tort claim against the jail:

> I was exiting the day room in the pod that I was housed in and tripped over a 55 gallon trash container and dislocated my finger, and as a result of that, I filed a personal injury suit against the jail, and it eventually was dismissed because I failed to comply with the notice of intent provisions under the personal injury statutes of Colorado law, which I had no knowledge of because there was no way that I could research that with the -- with the lack of a law library.
>
> I feel its impossible to comply with . . . a lot of the . . . civil and the criminal law statutes and requirements if I don't have access to some way of researching this information and knowing what's expected of me and required of me in order to meet deadlines and in order to properly prepare petitions.

Id. at 131:20-132:12.

The plaintiff's constitutional right to access the courts extends to the preparation of habeas petitions and initial pleadings in civil rights actions which challenge conditions of current confinement.  Carper v. DeLand, 54 F.3d 613, 616 (10th Cir. 1995).  The right does not include preparation of tort claims.  Id.  Moreover, I note that the plaintiff subsequently admitted that the notice requirements are part of the Colorado Governmental Immunity Act which is in the Colorado Revised Statutes, to which he had access.  Id. at 132:13-22.

The plaintiff claims that copies were difficult to obtain at the jail, id. at 133:2-11, but he did not provide any evidence of how his efforts to pursue a nonfrivolous claim were hindered by a lack of copies.

Finally, in his Response, the plaintiff refers to his inability to pursue what appears to be a separate civil case in this Court:

> Plaintiff asserts that the lack of a constitutionally adequate law library further prevented plaintiff from complying with U.S. District Court directives issued in Civil Action No. 03-ES-1030 relevant to filing an appeal.  Plaintiff without access to adequate or reasonable legal research resources could not file an appeal, no law library, no appeal.

*Response*, p. 15.

The plaintiff does not identify which legal resources were unavailable or how the alleged lack of resources hindered his efforts to pursue a nonfrivolous claim.

I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks summary judgment on Claim Three

## IV.  CONCLUSION

I respectfully RECOMMEND that Defendants' Motion for Summary Judgment be GRANTED and that summary judgment enter in favor of the defendants on all of the plaintiffs' claims.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474

U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

 Dated July 11, 2007.

     BY THE COURT:

      s/ Boyd N. Boland
     United States Magistrate Judge